# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN WARDEN, Individually and on Behalf of All Others Similarly Situated | § § § | |
| v. | § § | CIVIL ACTION NO. 3:24-CV-2156-S |
| PILOT CATASTROPHE SERVICES, INC. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Pilot Catastrophe Services, Inc.'s Motion to Compel Arbitration and Stay Proceedings ("Motion") [ECF No. 16]. The Court has reviewed the Motion, Defendant's Brief in Support of the Motion ("Defendant's Brief") [ECF No. 17], Plaintiff Brian Warden's Response in Opposition to Defendant's Motion to Compel Arbitration ("Response") [ECF No. 24], Defendant's Reply in Support of the Motion [ECF No. 25], and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

### I. BACKGROUND

#### A. *Plaintiff's Claims*

This case arises out of an alleged failure to pay for overtime hours. While working for Defendant, Plaintiff was paid on a "day-rate basis" of $300 per day, but he alleges that he "regularly worked in excess of forty hours per week" Pl.'s Original Compl. [ECF No. 1] ¶¶ 21-23. According to Plaintiff, Defendant failed to pay Plaintiff the statutory overtime rate for these extra hours and instead paid Plaintiff "on a day-rate basis without overtime." *Id.* ¶¶ 25-26. Plaintiff also alleges that Defendant failed to pay other employees in his same position the proper rate for working overtime. *Id.* ¶¶ 44, 61-62.

Accordingly, Plaintiff brings individual and collective action claims for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq., and a claim for liquidated

damages, attorney's fees, and costs. *Id.* ¶¶ 45-75. Defendant subsequently filed the Motion, seeking to compel arbitration, dismiss the collective action claim asserted by Plaintiff, and stay all court proceedings pending arbitration. *See* Mot. 1-2.

### B. The Arbitration Agreement

To apply to his job with Defendant, Plaintiff submitted an application on Defendant's website. App. in Supp. of Def.'s Mot. ("Defendant's Appendix") [ECF No. 18] 2 ¶¶ 5-6. To do so, Plaintiff had to create an application profile, which required unique login credentials known only to Plaintiff. *Id.* Defendant's application tracking system, ICIMS, then sent Plaintiff a secure link requesting completion of onboarding paperwork. *Id.* at 2 ¶ 6. In completing the onboarding paperwork, according to Defendant, Plaintiff signed an arbitration agreement ("Arbitration Agreement"). *Id.* at 2-3 ¶¶ 6-7. To access and sign the Arbitration Agreement, Plaintiff had to log in to ICIMS with his unique email address or username and password. *Id.* at 3 ¶ 6.

The Arbitration Agreement provides that Defendant and Plaintiff "agree to binding arbitration as the exclusive remedy" for "any dispute or claim between [Plaintiff] and [Defendant], whether arising in tort, contract, statute, regulation, equity, common or other law, or otherwise." *Id.* at 7 § 4(a). The Arbitration Agreement also provides that "[a]ll arbitration covered by this Agreement shall be brought on an individual basis only and not as a class, consolidated and/or collective action." *Id.* at 7 § 5(a).

Defendant contends that Plaintiff affirmatively accepted the Arbitration Agreement "by checking the 'Signature' box, which plainly states that 'checking the checkbox above is equivalent to a handwritten signature.'" Def.'s Br. 7 (citing Def.'s App. 11). Plaintiff "disputes that he received (or even ever saw) [Defendant's] arbitration agreement and that he signed it." Resp. 4.

2

Moreover, Plaintiff argues that "there are several important facts that call into question the legitimacy of his 'signature' which is simply a checkbox next to his typewritten name." *Id.*

## II. LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that a party seeking to enforce an arbitration provision may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.

Whether to enforce an arbitration agreement involves two analytical steps. "First, the court must determine whether the parties agreed to arbitrate the dispute." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (citation omitted). This first question requires two determinations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quoting *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003)). Second, a court "must consider whether any federal statute or policy renders the claims nonarbitrable." *Id.* (citation omitted). In analyzing these steps, the court may look to "the pleadings and evidence on file." *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 444 (N.D. Tex. 2019) (citing FED. R. CIV. P. 56(a)).

"[W]here a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." *Will-Drill*, 352 F.3d at 219. The "threshold burden" for the party attacking the arbitration agreement is to put the making of the agreement "in issue." *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 363-64 (5th Cir. 2015) (citations omitted); *see also Gallagher v. Vokey*, 860 F. App'x 354, 357 (5th Cir. 2021) (noting

that the question before the court when the existence of an arbitration agreement is challenged is whether the plaintiff puts the agreement "in issue"); *Trammell v. AccentCare, Inc.*, 776 F. App'x 208, 209-10 (5th Cir. 2019) (stating that the party challenging agreement formation bears the "initial" burden so as to "limit meritless claims of invalidity" (citation omitted)). To put the making of the agreement in issue, the party must unequivocally deny that he agreed to arbitrate and must produce "some evidence" supporting his position. *Chester*, 607 F. App'x at 363-64 (citation omitted). The Fifth Circuit "has not articulated precisely what quantum of evidence is necessary to prove or disprove the existence of an agreement to arbitrate," but the party resisting arbitration "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true and he must produce at least some evidence to substantiate his factual allegations." *Gallagher*, 860 F. App'x at 357 (cleaned up).

### III. ANALYSIS

The Court will first address Defendant's argument that Plaintiff's claims are subject to the Arbitration Agreement. Next, the Court will consider whether Plaintiff is entitled to discovery on the issue of arbitrability. Lastly, the Court will determine whether Plaintiff's collective action claim is barred by the Arbitration Agreement.

#### *A. Motion to Compel Arbitration*

To determine whether Plaintiff is required to arbitrate his claims, the Court first looks at whether a valid agreement to arbitrate exists in this case. *Will-Drill*, 352 F.3d at 214 (citation omitted). Defendant argues that the Court must compel arbitration because Plaintiff signed the Arbitration Agreement. *See* Def.'s Br. 6-9. Plaintiff, however, disputes that he received, signed, or saw the Arbitration Agreement and challenges whether the checkbox next to his typewritten name

4

signifies his assent. *See* Resp. 4-5. Because Plaintiff denies signing the Arbitration Agreement, the threshold question for the Court is whether Plaintiff has put the making of the Arbitration Agreement in issue. The Court concludes that he has not.

Plaintiff provides no evidence to support his assertion that he did not receive, sign, or see the Arbitration Agreement. With no supporting evidence, Plaintiff's conclusory assertions are insufficient to put the making of the Arbitration Agreement in issue. *See Gallagher*, 860 F. App'x at 358-59 (finding the making of an agreement not in issue because the plaintiff produced no evidence supporting his assertion that he did not sign the agreement).

Plaintiff also questions the legitimacy of his signature since it is "simply a checkbox next to his typewritten name." Resp. 4. But Plaintiff provides no case law to support this argument. To determine whether a marked checkbox is sufficient to establish assent to an agreement, the Court will apply Alabama law pursuant to the Arbitration Agreement's choice-of-law provision. *See* Def.'s App. 10 § 15 ("[T]he Parties agree that this Agreement shall be governed by the substantive law of the State of Alabama[.]"); *Edwards v. Doordash, Inc.*, 888 F.3d 738, 745 (5th Cir. 2018) (using the applicable state law in the choice-of-law provision to "evaluate the underlying [arbitration] agreement" (citation omitted)). "Under Alabama law there is no requirement that a contract contain a signature to demonstrate assent; the existence of a contract may be inferred from external and objective manifestations of assent." *McConico v. Wal-Mart Stores, Inc.*, No. 7:19-CV-1600-GMB, 2021 WL 1102416, at *4 (N.D. Ala. Mar. 23, 2021) (citation omitted), *appeal dismissed per voluntary motion*, No. 21-11293-D, 2021 WL 4854032 (11th Cir. May 4, 2021). Federal courts applying Alabama law have found that assent to a contract can be established by marked checkboxes such as the one used by Plaintiff here. *See, e.g., Carusone v. Nintendo of Am., Inc.*, No. 5:19-CV-01183-LCB, 2020 WL 3545468, at *3-4 (N.D. Ala. June 30, 2020) (holding

that the plaintiff "manifested the requisite assent to the essential terms of the contract, including the arbitration provision," by "click[ing]" the Agreement's "Accept" button).[1] In this case, the marked checkbox provides "an external and objective manifestation of [Plaintiff's] assent" to the Arbitration Agreement. *McConico*, 2021 WL 1102416, at *4.

Moreover, Plaintiff accessed the Arbitration Agreement through ICIMS using unique login credentials that were only available to Plaintiff. Def.'s App. 2-3 ¶¶ 5-6. And Plaintiff has not presented any evidence showing that he did not log on to the ICIMS on the date the Arbitration Agreement was signed or that he gave the login credentials to someone else. *See Coon v. Crawford & Co.*, No. 3:23-CV-2732, 2024 WL 2804931, at *3-4 (N.D. Tex. May 30, 2024) (finding the making of an arbitration agreement in issue where the plaintiff presented declarations denying that she accessed her employer's onboarding program on the date she allegedly signed the arbitration agreement). Overall, Plaintiff has failed to meet his threshold burden of putting the making of the Arbitration Agreement in issue. And since the evidence shows that Plaintiff signed and thus assented to the Arbitration Agreement, the Court finds that a valid arbitration agreement exists between Plaintiff and Defendant.

The Court next determines whether the Arbitration Agreement covers Plaintiff's claims against Defendant. *Will-Drill*, 352 F.3d at 214 (citation omitted). The Court looks at the language of the Arbitration Agreement to make this determination. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S.

---

[1] *See also Wilson v. Alorica, Inc.*, No. 2:17-CV-2182-TMP, 2018 WL 2229703, at *2-3 (N.D. Ala. May 16, 2018) (holding that the plaintiff employee assented to the arbitration agreement because he used a "unique login and password" to "click[] a box acknowledging the [arbitration] agreement"); *Kemp v. GameStop, Inc.*, No. 7:18-CV-01647-LSC, 2019 WL 2024292, at *2-3 (N.D. Ala. May 8, 2019) (holding that the plaintiff employee assented to the arbitration agreement "when he clicked the 'I agree' box that attached his e-signature to the arbitration agreement" in the employee handbook); *McConico*, 2021 WL 1102416, at *4 (holding that since the plaintiff "checked the webpage's box indicating that he had read and agreed to the terms of the cardholder agreement . . . [the plaintiff] provided an external and objective manifestation of assent to the contract").

279, 289 (2002) ("[I]t is the language of the contract that defines the scope of disputes subject to arbitration." (citation omitted)). The Arbitration Agreement applies to "any dispute or claim between [Plaintiff] and [Defendant], whether arising in tort, contract, statute, regulation, equity, common or other law, or otherwise." App. 7 § 4(a). Plaintiff brings against Defendant claims for violations of the FLSA, which are "claim[s] . . . arising in . . . statute." *Id.* Thus, Plaintiff's claims fall within the Arbitration Agreement's scope.

Finally, the Court considers whether any federal policy or statute renders Plaintiff's claims non-arbitrable. *Will-Drill*, 352 F.3d at 214 (citation omitted). Plaintiff does not argue that any federal policy or statute renders his FLSA claims non-arbitrable, nor could he. Under Fifth Circuit law, FLSA claims like the ones brought by Plaintiff are subject to arbitration. *See Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 298 (5th Cir. 2004).

Finding that Plaintiff failed to put the existence of the Arbitration Agreement in issue, that the Arbitration Agreement is valid, that it covers Plaintiff's claims against Defendant, and that no federal policy or statute renders these claims non-arbitrable, the Court concludes that Plaintiff's claims are subject to arbitration.

### *B. Request for Discovery*

The Court next addresses whether Plaintiff is entitled to his requested discovery related to the existence of the Arbitration Agreement. Resp. 5. Specifically, Plaintiff requests electronically stored information related to the viewing and execution of the Arbitration Agreement; the identity of Plaintiff's managers and supervisors at the time of his hire; any complaints, investigations, reports, correspondence, or other documents related to the completion of new hire paperwork; and Plaintiff's complete personnel file. *Id.* Plaintiff also asks for permission to depose: (1) the

individual who authenticated Plaintiff's signature; and (2) a Federal Rule of Civil Procedure 30(b)(6) witness on the subject of Defendant's alternative dispute resolution policy. *Id.*

As an initial matter, allowing discovery on the issue of arbitrability would undercut the purpose of the FAA. The FAA "calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Diggs v. Citigroup, Inc.*, 551 F. App'x 762, 766 (5th Cir. 2014) (quoting *Bell v. Koch Foods of Miss., LLC*, 358 F. App'x 498, 500-01 (5th Cir. 2009)). Its intent is "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Com. Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 340 (5th Cir. 1984) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). Allowing the requested discovery would only delay the enforcement of the Arbitration Agreement. Moreover, Plaintiff had an opportunity to provide evidence to meet his threshold burden of putting the existence of the Arbitration Agreement in issue. But he failed to do so. And under Fifth Circuit law, a plaintiff is not entitled to additional discovery on the issue of arbitrability merely because he has this threshold burden. *See Bell*, 358 F. App'x at 500-01 (rejecting the plaintiffs' argument that they were entitled to discovery related to the issue of arbitrability because they bore the burden of proof to defeat arbitration).

Further, much of the requested discovery is either irrelevant or within the personal knowledge of Plaintiff. First, Plaintiff does not explain how several categories of the requested discovery would lead to information relevant to whether he received, signed, or saw the Arbitration Agreement. For example, any information gleaned from the identity of Plaintiff's managers and supervisors or a deposition of a Rule 30(b)(6) witness on Defendant's alternative dispute resolution policy has no bearing on whether Plaintiff received, signed, or saw the Arbitration Agreement. *See*

8

*id.* at 501 (affirming district court's denial of motion for discovery on the issue of arbitrability since much of the requested information was irrelevant).

Second, whether Plaintiff received, signed, or saw the Arbitration Agreement is information within his own personal knowledge. *See id.* (affirming district court's denial of motion for discovery on the issue of arbitrability since much of the requested information was within plaintiff's personal knowledge). But Plaintiff did not provide any declaration in which he unequivocally denied receiving, signing, or seeing the Arbitration Agreement. And if his failure to do so was because he could not remember whether he received, signed, or saw the Arbitration Agreement, this mere failure to remember will not put the existence of the Arbitration Agreement in issue, *see Batiste v. Island Recs., Inc.*, 179 F.3d 217, 223 (5th Cir. 1999), and it is not enough to warrant more discovery as to that agreement's existence. Additionally, the evidence shows that Plaintiff's ICIMS login credentials were accessible only to Plaintiff, *see* Def.'s App. 2 ¶¶ 5-6, and thus only he could sign the Arbitration Agreement. Plaintiff provided no evidence suggesting that he, for example, gave these unique login credentials to anybody else, a fact fully within his own personal knowledge. *See Ameriprise Fin. Servs., Inc. v. Etheredge*, 277 F. App'x 447, 449-50 (5th Cir. 2008) (affirming denial of request for discovery as the plaintiff requested a handwriting analysis even though he never denied the signature on the arbitration agreement was his or alleged that the signature was a forgery).

Accordingly, and given that a "district court has considerable discretion in managing discovery matters," *Diggs*, 551 F. App'x at 766 (citation omitted), the Court denies the request for discovery related to the existence of the Arbitration Agreement.

### *C. Collective Action Claim*

The Court further concludes that Plaintiff agreed to arbitrate his claims on an independent basis. The Fifth Circuit has held that parties can waive their right to proceed collectively under the FLSA by signing a valid arbitration agreement. *Carter*, 362 F.3d at 298 (citations omitted); *see also D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 357 (5th Cir. 2013) ("The use of class action procedures . . . is not a substantive right." (citation omitted)). Whether a party can bring a collective action through arbitration "is a 'gateway' issue that must be decided by courts, not arbitrators—absent clear and unmistakable language in the arbitration clause to the contrary." *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 717 (5th Cir. 2019). The Arbitration Agreement provides that "[t]he arbitrator does not have the authority to determine whether to arbitrate a class, consolidated and/or collective action, nor shall the arbitrator be permitted to arbitrate any class, consolidated and/or collective action." Def.'s App. 7 § 5(a). This clause demonstrates that collective action arbitrability is a "gateway" issue that the Court must decide. *See 20/20 Commc'ns*, 930 F.3d at 717-19.

The Court looks at the language of the Arbitration Agreement to determine whether Plaintiff can proceed with his collective action claim. The Arbitration Agreement provides that "[a]ll arbitration covered by this Agreement shall be brought on an individual basis only and not as a class, consolidated and/or collective action." App. 7 § 5(a). This language is clear. By signing the Arbitration Agreement, Plaintiff waived his right to bring a collective action. The Court therefore dismisses Plaintiff's collective action claim under 29 U.S.C. § 216(b). *See, e.g., Flores v. BJ's Rest.*, No. 1:21-CV-1185-DII, 2024 WL 3455271, at *1-2 (W.D. Tex. Jan. 3, 2024) (compelling individual arbitration and dismissing collective action claim (citing *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 525 (2018))).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration and Stay Proceedings [ECF No. 16]. Plaintiff's collective action claim is **DISMISSED WITH PREJUDICE**. Plaintiff's remaining claims against Defendant herein are stayed. *See* 9 U.S.C. § 3. It is therefore **ORDERED** that this case is administratively closed pending resolution of the arbitration.

**SO ORDERED.**

SIGNED December 4, 2024.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**